M2o5zulS

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,              New York, N.Y.

 4             v.                           20 Cr.160 (MKV)

 5   MARCOS ZULUETA,

 6             Defendant.

 7   ------------------------------x

 8                                          February 24, 2022
                                            9:40 a.m.
 9

10   Before:

11                    HON. MARY KAY VYSKOCIL,

12                                      U.S. District Judge

13

14                         APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     BY:  ANDEN F. CHOW
17        Assistant United States Attorney

18   ROBERT E. GOLDMAN, LLC
          Attorneys for Defendant
19   BY:  ROBERT E. GOLDMAN

20

21   ALSO PRESENT:  GABRIEL MITRE, Spanish Interpreter
                     BRUCE TURPIN, Special Agent, FBI
22

23

24

25
```

M2o5zulS

```
 1                (Case called)
 2                THE DEPUTY CLERK:  Counsel, starting with the
 3     government, please state your name for the record.
 4                MR. CHOW:  Anden Chow for the government.  Good
 5     morning, your Honor.
 6                THE COURT:  Good morning, Mr. Chow.
 7                MR. CHOW:  With me today is special agent Bruce Turpin
 8     with the FBI.
 9                THE COURT:  Good morning Special Agent Turpin.
10                AGENT TURPIN:  Good morning, your Honor.
11                For the defendant?
12                MR. GOLDMAN:  Yes.  Robert Goldman, your Honor, good
13     morning.
14                THE COURT:  Good morning.
15                And you are Mr. Zulueta?
16                THE DEFENDANT:  (In English) Good morning.
17                THE COURT:  Good morning.  Please, be seated.
18                And good morning to our court reporter Ms. Utter.
19     Thank you for being here.
20                So we are here this morning for the sentencing of
21     Mr. Zulueta.  As you know, I am Judge Vyscocil, and I have been
22     presiding over this case.  Before we get to the substance,
23     Mr. Zulueta, I understand that you have requested that there be
24     an interpreter available today?
25                THE DEFENDANT:  (In English)  Yes.
```

M2o5zulS

1          THE COURT:  And we do have an interpreter on standby

2     as I understand it, correct?

3          INTERPRETER:  Yes, Judge.

4          THE COURT:  Are you not simultaneously translating

5     everything?

6          INTERPRETER:  I am currently not at the request of the

7     defendant and his counsel, Judge, but I am prepared to do so at

8     any time.

9          THE COURT:  Mr. Goldman, I would like you to make a

10     record on this, please.

11          I want to just note two things.  Mr. Zulueta did

12     request that we have an interpreter on standby at his plea and

13     we did do that.

14          MR. GOLDMAN:  Yes.

15          THE COURT:  We have somebody here today, should

16     Mr. Zulueta request that, but I also note that in a lot of the

17     transcribed calls that are part of the record today in which

18     Mr. Zulueta was conferring with Jorge Navarro -- both of whom

19     are apparently native Spanish speakers -- they communicated in

20     English.

21          Is that correct, Mr. Chow?

22          MR. CHOW:  That is correct, your Honor.

23          THE COURT:  So, Mr. Goldman, I don't know how you want

24     to handle the issue of an interpreter.

25          MR. GOLDMAN:  Yes, your Honor.

M2o5zulS

1          THE COURT:  Clearly, Mr. Zulueta is entitled to it if

2     he wishes.

3          MR. GOLDMAN:  Your Honor, we are doing this for

4     cautionary purposes.  There is times when certain words or

5     legal terms or whatever might be difficult for my client to

6     understand in the English language.  I have always been able to

7     communicate with him in English.  This is just to be cautious

8     and to not to delay the proceedings in case something comes up.

9          THE COURT:  Yes, of course.

10          I mean, Mr. Zulueta, it is very important that you

11     understand what I am saying to you today and what the

12     government and your lawyer will put on the record.  So if at

13     any time, at any point you need the assistance of an

14     interpreter, you need to please let Mr. Goldman know and he

15     will advise the Court.

16          THE DEFENDANT:  (In English) Yes, your Honor.

17          THE COURT:  Do you want simultaneous translation of

18     everything?

19          THE DEFENDANT:  (In English)  No.  I -- when I don't

20     understand some word that's when I need, you know -- I need to

21     explain me.  I can understand it maybe 75 percent, 80 percent.

22          THE COURT:  All right.  So you will let us know --

23          THE DEFENDANT:  (In English)  Yes, your Honor.

24          THE COURT:  -- if you need an interpreter, correct?

25          THE DEFENDANT:  (In English)  Yes, your Honor.

M2o5zulS

1          THE COURT:  Thank you.  You may be seated.

2          I will also say before we get going that everyone can

3    remain seated until I impose judgment, at which point I will

4    ask you, Mr. Zulueta, to stand.  But, otherwise, please remain

5    seated because the microphones pick you up much more clearly

6    when you are seated.

7          For the record, Mr. Zulueta pled guilty on October

8    15th, 2021, pursuant to an agreement with the government, to

9    one count of drug adulteration and misbranding with intent to

10   defraud in violation of Title 21, United States Code,

11   Section 331 and 333A2.  Since then, the probation office has

12   met with Mr. Zulueta in the presence of his counsel.  It has

13   completed its investigation.  I have the presentence report

14   together with the submissions filed by both sides.

15         For the record, the following have been submitted and

16   I am going to ask you to confirm at the conclusion that what I

17   am reciting is the complete and accurate record before me.

18         So I have the final presentence report filed on

19   October 6th, 2022, at ECF 638.  I have defendant's sentencing

20   submission filed on February 11, 2022, at ECF 766.  That

21   initial submission enclosed seven letters of support.  On

22   February 22nd, I received a further submission from defense

23   counsel that enclosed eight additional letters including a

24   letter from Mr. Zulueta, and that is filed at ECF 781.  I just

25   note that one of those letters had already been submitted with

M2o5zulS

1    the initial submission.  Today Mr. Goldman has provided to the

2    Court one additional letter in support of Mr. Zulueta.

3            The government's sentencing submission was filed on

4    February 17th, 2022, and that is on the docket at ECF 773.  It

5    attaches two exhibits, A and B, both of which are under seal.

6            Mr. Chow, the submission itself is not under seal,

7    correct?

8            MR. CHOW:  That is correct.

9            THE COURT:  So let me confirm with both sides that

10   this is the totality of the record before the Court.

11           Mr. Goldman?

12           MR. GOLDMAN:  Yes, your Honor.

13           THE COURT:  Mr. Chow?

14           MR. CHOW:  Yes, your Honor.

15           THE COURT:  Thank you.

16           Mr. Goldman, would you confirm for me, please, have

17   you had a full opportunity to read the presentence report, to

18   discuss it with Mr. Zulueta, and to lodge any objections?

19           MR. GOLDMAN:  We have, your Honor.

20           THE COURT:  Mr. Zulueta, have you read the presentence

21   report?

22           THE DEFENDANT:  (In English)  Yes, your Honor.

23           THE COURT:  Have you discussed it with Mr. Goldman?

24           THE DEFENDANT:  (In English)  Yes, your Honor.

25           THE COURT:  Have you had all the time you need to

M2o5zulS

1    discuss it with your lawyer?

2            THE DEFENDANT:  (In English)  Yes, your Honor.

3            THE COURT:  And you have had time to raise any

4    concerns or objections?

5            THE DEFENDANT:  (In English)  Yes, your Honor.

6            THE COURT:  Mr. Chow, has the government had an

7    opportunity to read the report and to tender any objections?

8            MR. CHOW:  Yes, your Honor.

9            THE COURT:  I have a couple of questions I would like

10   to -- or a couple of issues I would like to review with the

11   parties before accepting the report.

12           First, Mr. Goldman, would you please confirm for me

13   that you have read and specifically discussed with Mr. Zulueta

14   the proposed conditions of supervised release which are set

15   forth in the PSR at pages 37 through 39?

16           MR. GOLDMAN:  I have, your Honor.

17           THE COURT:  And are you comfortable with me referring

18   to them generically as the standard and mandatory conditions

19   and not putting them verbatim on the record?

20           MR. GOLDMAN:  Certainly, your Honor.

21           THE COURT:  Thank you.

22           Mr. Chow, does the government still believe that

23   Mr. Zulueta is entitled to the two-level reduction in the

24   offense level calculation based on his clearly demonstrated

25   acceptance of responsibility?

M2o5zulS

1          MR. CHOW:  Yes, your Honor.

2          THE COURT:  And does the government now move for a

3    further one-level reduction pursuant to Section 3E1.1(b) by

4    reason of defendant's timely notice of his intention to enter a

5    plea of guilty?

6          MR. CHOW:  It does, your Honor.

7          THE COURT:  That motion is granted.

8          So let me just confirm for the record that it is

9    Court's understanding that neither party has any objection to

10    the PSR, and I note specifically that that is even though the

11    PSR guidelines calculation is different than that which the

12    parties agree to in the plea agreement.

13          Mr. Goldman, is that correct?  No objection to the

14    PSR?

15          MR. GOLDMAN:  That's correct, your Honor.

16          THE COURT:  Government?

17          MR. CHOW:  That's correct, your Honor.

18          THE COURT:  There are no objections to the PSR and I

19    will therefore adopt the PSR and the factual findings and the

20    guidelines calculation therein.  Again, I note that the

21    stipulated guidelines range in the plea agreement does not

22    match what is set forth in the PSR calculation, but the parties

23    do agree that the guidelines range in the PSR is correct.  I

24    will also note for the record that what is in the PSR matches

25    the Court's own independent calculation of the guidelines range

M2o5zulS

which I am obligated to make.  So, I adopt the PSR in full, it
will be made part of the record in this case, and placed under
seal.  If an appeal is taken, counsel on appeal may have access
to the sealed PSR report without further application to the
Court.

So, does the government wish to be heard at this time?

MR. CHOW:  Briefly, your Honor.

I believe the government has set forth a fulsome
recitation of the facts in its argument for why it believes a
sentence within the calculated guidelines range of the plea
agreement is appropriate in this case.

I do want to emphasize two aspects about this case.
The first is that this case is a constant reminder of the
perversion of everything noble by greed.  Throughout the
submission and the letters of support submitted by the defense
there are a multitude of references to how hard it was for the
defendant to pull himself up from his hardscrabble upbringings
and it was his hard work and determination that brought him
into this country and gave him a foothold.  And these are truly
laudable characteristics.  But, as it turns out, it wasn't
enough for this defendant.

The crime at issue was not one of desperation or need.
It was greed.  This was wanting a million dollar business the
easy way.  By cheating.  He wanted the recognition, the
respect, the money associated with winning, but was no longer

1    willing to do it the hard way, the way that all other

2    law-abiding citizens have to do it.

3            And so, along the way, he abandoned another important

4    attribute, and this is referenced throughout the letters, about

5    how he demonstrated care for the horses under his charge.  But,

6    as evidenced by the intercepted communications in this case,

7    they show how far he has strayed.  Endangering horses, nearly

8    killing them, this no longer phased him, and in the process he

9    normalized the systemic abuse of these animals.  He no longer

10    prioritized their health, he no longer cared that he was

11    abusing them.  He was treating them as no more than tools or

12    machines that he could manipulate to win.  And for these two

13    reasons, and all the other reasons set forth in the

14    government's submission, the government respectfully submits

15    that a sentence within the guidelines range set forth in the

16    plea agreement would be appropriate in this particular case.

17            THE COURT:  Thank you.

18            Mr. Goldman, would you like to be heard?

19            MR. GOLDMAN:  Yes, your Honor.  Do you mind if I

20    stand?

21            THE COURT:  Sure.  Whatever you are more comfortable

22    with but you will use the podium so the microphone picks you

23    up.

24            MR. GOLDMAN:  Yes.  Thank you, your Honor.

25            Your Honor, the first thing I would like to address is

1    what is set forth in the presentence report, and it is my

2    belief that the Criminal History Category overstates the

3    criminal history of Mr. Zulueta, and therefore would warrant a

4    reduction down to Criminal History I.

5         THE COURT:  That gets you right back to where you were

6    in the plea agreement though, right?

7         MR. GOLDMAN:  Yes, but you can do that.  You can do

8    that under the sentencing guidelines.  It is a sentencing

9    issue --

10         THE COURT:  No, I understand that.  I am asking is

11    that the effect, if I were to adopt your argument?

12         MR. GOLDMAN:  Yes, your Honor.

13         THE COURT:  OK.

14         MR. GOLDMAN:  Yes.

15         And the reason for that is the DUI.  Well, there is

16    two summaries and the DUI was not a plea of guilty, and it was

17    not a finding of guilty, and has actually been expunged, it is

18    a diversionary program.  In Bucks County, where he was placed

19    on that program, I was a prosecutor there and I do criminal

20    defense work there, amongst other places, and so that's -- in

21    Bucks County there is no requirement whatsoever that that

22    person acknowledges guilt.  They're accepted into the

23    diversionary program and at the conclusion of six months that

24    they don't get any other arrest during that six months' period,

25    then the Court then dismisses the charges and the charges are

M2o5zulS

1    expunged except for purposes of law enforcement going back and

2    looking for the record.

3            So in reality, your Honor, we have two summaries and

4    we have a non-conviction of Mr. Zulueta for the DUI and so

5    because of that, your Honor, I think that the recommendation of

6    the probation office is warranted and, respectfully, I ask you

7    to accept that and sentence him under Criminal History I.  It

8    is not a significant difference but it is a difference of three

9    months and I think it is warranted under the facts in this

10   case.

11           And I was not going to quarrel with, you know -- I am

12   not one to quarrel with presentence reports if I don't need to.

13   I didn't think I needed to in that case and I thought the

14   request for the reduction would adequately cover this.

15           So I think -- I don't know if you want to rule on that

16   now, your Honor, or at the end.

17           THE COURT:  I don't need to rule on that.  It's your

18   position that I can take into account.  You have said you don't

19   object to the PSR.  I only need to rule on objections.

20           MR. GOLDMAN:  Well, your Honor, respectfully, my

21   experience is that the Court has to first decide where the

22   criminal history is.

23           THE COURT:  I told you, and I will recite before

24   sentencing my calculation under the guidelines, but I told you

25   that I agree with the calculations set forth in the PSR which

M2o5zulS

1    you and the government have said you do not dispute.

2              MR. GOLDMAN:  Sure, but the second step is then --

3              THE COURT:  So there is nothing to rule on.

4              MR. GOLDMAN:  There is, your Honor.  I'm asking for a

5    reduction in the criminal history to Criminal History I because

6    it is overstated and that's to be done not in objections,

7    that's to be done as I am doing now.  I am not arguing with the

8    Court.

9              THE COURT:  It is part of your argument, and as you

10   have just acknowledged, I asked you, even if I were to credit

11   what you are saying, that gets you back to where you were in

12   the plea agreement with a guidelines range of 30 to 36 months,

13   correct?

14             MR. GOLDMAN:  That's right.

15             THE COURT:  That's what I have used as not my

16   calculation but my thought process -- which I will lay out for

17   you after I hear from you and Mr. Zulueta, if he wishes to

18   speak with me.

19             MR. GOLDMAN:  OK.  I just made the request that it be

20   done.  Thank you.

21             But let me get to the substance here.

22             THE COURT:  Yes.  Please.

23             MR. GOLDMAN:  It has never been --

24             THE COURT:  Sorry.

25             By the way, let me say one more thing on this.

M2o5zulS

1   Regardless of the impact on the guidelines calculation which

2   is, as set forth in the PSR, correct; a DUI, whether there is a

3   conviction or not, is certainly conduct that's part of the

4   whole mix of what I am permitted to consider, correct?

5           MR. GOLDMAN:  No, because it was an ARD.  It is a

6   non-conviction.  So, I mean, I believe you only consider

7   convictions.

8           THE COURT:  OK.  Go on to the rest of your position.

9           MR. GOLDMAN:  The amount of time difference is not

10  worth me dwelling on this further but --

11          THE COURT:  Correct.

12          MR. GOLDMAN:  -- but it is necessary for me to have

13  stated it, your Honor.

14          Your Honor, what I was saying is I think you can see

15  we have never minimized in this case the seriousness of the

16  offenses.  There is no doubt how serious the offense is in this

17  case and I'm not here to diminish in any way the actions of my

18  client and my client hasn't done so either.  So you are dealing

19  with a balance, now, of the seriousness of the offense and now

20  we are looking at the 3553 other factors which, obviously, you

21  know, you need to consider, and to consider to see whether or

22  not a variance in the sentencing guidelines is warranted in

23  this case.  And I respectfully submit to you that I believe

24  that it is warranted in this case.

25          THE COURT:  Are you arguing for a variance or going

M2o5zulS

```
1    back to your earlier argument?  I just want to note something
2    that you say in your submission -- well, the PSR does make the
3    argument that probation thinks the defendant's criminal history
4    category may substantially overrepresent the seriousness of his
5    criminal history and may warrant a departure.
6              You say in the defendant's submission:  The defendant,
7    of course, "fully endorses the 'departure' to Criminal History
8    Category I recommended by the PSR."
9              Now, pursuant to the plea agreement it is my
10   understanding that the defendant agreed not to request a
11   departure.
12             MR. GOLDMAN:  Judge, on this type of issue that is
13   never foreclosed by a guilty plea between the government and
14   the defense.
15             THE COURT:  Notwithstanding that the plea agreement
16   was negotiated based on what your client told the government
17   about his criminal history?
18             MR. GOLDMAN:  Yes, your Honor.  I mean --
19             THE COURT:  So he can basically be less than
20   forthcoming?
21             MR. GOLDMAN:  That's not what I am saying, your Honor,
22   and that is based upon 28 years as a prosecutor, 19 as a
23   federal prosecutor, and 40-some years of doing criminal law.  I
24   am submitting to this Court that in the eyes of a defense
25   attorney and as a prosecutor, as I practice as a prosecutor,
```

M2o5zulS

1    the first step is what are the guidelines and then if there is

2    an argument on criminal history overstating the criminal

3    history, that argument can be made.  And I have never seen it

4    foreclosed by a prosecutor or by a Court.

5            THE COURT:  So are you arguing, though -- I didn't

6    mean to divert you back from the substance but are you arguing

7    that this, in your view, overstatement of the criminal history,

8    warrants a departure or a variance?

9            MR. GOLDMAN:  Both.

10           THE COURT:  Your motion or your application for a

11   departure is denied.

12           Go ahead, though, with respect to the substance.

13           MR. GOLDMAN:  Then I would ask on that, so I don't

14   have to go back, circle back to it, that it is grounds for a

15   variance from the sentencing guidelines.

16           THE COURT:  You can make your -- that I don't need to

17   rule on independently.

18           MR. GOLDMAN:  So what I was saying, your Honor, is

19   there is no dispute on our side or any minimization has ever

20   been raised in this case by us as far as what Mr. Zulueta did

21   and what is reflected in the government's prosecution in this

22   case but you are to sentence Mr. Zulueta as an individual and

23   clearly as different from any other defendants.

24           THE COURT:  Correct.

25           MR. GOLDMAN:  They're not all just lumped together and

M2o5zulS

1    just get a blanket, top-of-the-guidelines or guideline

2    sentence.

3            In this case Mr. Zulueta, as evidenced by the letters

4    that have been submitted by people that know him best,

5    reinforce the fact that he is immensely remorseful for what he

6    did, he has accepted responsibility in his community for what

7    he did, he has told people in his community what he did in this

8    case, and we wouldn't even insult the Court by coming in here

9    and asking for a probationary sentence or a house arrest

10    sentence, but I am asking for a variance in the guidelines

11    along the lines what is recommended by probation in this case.

12            Mr. Zulueta, as the Court is fully aware -- if you

13    will give me opportunity to restate this -- we all know what he

14    did bad, but we also have to reflect on the good man that he

15    is.  You can have that and I am certainly aware that you know

16    this by now, handling the criminal cases, that the people

17    before the Court often present a conflicted individual, a

18    person with two sides, a person that appears in Court for

19    having done wrong and a person, who in this case, has done a

20    lot of good.  And the question you heard probably from every

21    defense attorney is what is a sentence that's no greater than

22    necessary in this case.

23            Mr. Zulueta has always worked hard in his life.  You

24    know well, and I don't need to spend much time on, his

25    background supporting his family in Cuba.  When he came to the

M2o5zulS

United States he continued hard work, manual labor, continued
to support up until the time that he has lost his employment,
an extended family, including his mother and his family
members, still reside in Cuba.

Obviously your sentence needs to reflect deterrence
but I would respectfully submit to this Court that what's
happened to Mr. Zulueta by his own acts is he has lost his
beloved occupation and his love which was racing horses.  And I
believe we all know that he is not going to get a license again
with this type of conviction.

He had to sell his house, he is being supported by his
girlfriend, he has lost the one job that he had and it is all
because of this case.  Those are collateral consequences, he
brought it upon himself, but we are looking at the punishment
that he has already received from his actions.  And so
respectfully, your Honor, it seems to me that something to
reflect upon, is he wants to get back out and become a
contributing member of society and I think that the letters
reflect that Mr. Zulueta can and will be that type of person.
And so the issue is, is 36 months or 33 months or 30 months or
what is recommended by the probation office, is one of those
going to accomplish the 3553 factors?  And I would respectfully
submit that it's not.  If your sentence is 34 months, or 36
months, or in the other range that I have stated, it is not
going to cause people not to be deterred and not to commit

M2o5zulS

```
1    offenses.  And we know that through the drug business and drug
2    trade.  It is the same thing.  People are just -- there will
3    always be people committing violations.  But I believe, your
4    Honor, that Mr. Zulueta has a lot to contribute and he can turn
5    his life around.  He has got great support from his family, he
6    has got great support by members of the community, and I would
7    respectfully ask you to grant a variance in this case and also
8    to grant the variance in the sentencing guidelines.
9            Thank you.
10           THE COURT:  Thank you.
11           Mr. Zulueta, you have a right to address the Court at
12   this point if you would like to do but you are not obligated to
13   do that.
14           Would you like to address the Court?
15           THE DEFENDANT:  Yes, your Honor.
16           THE COURT:  All right.  It is up to you if you want to
17   stand.  If you want, you can go over there, that way you don't
18   have to bend down to the table.
19           THE DEFENDANT:  (In English)  All my life I tried to
20   do the right thing.  I came to this country.  This country gave
21   me great opportunity.  Great opportunity.  I made mistake.  I
22   take responsibility.  I am sorry for all the people I hurt.
23           Thank you, your Honor.
24           THE COURT:  Thank you, Mr. Zulueta.
25           I will now describe the sentence that I intend to
```

M2o5zulS

1    impose.  Obviously the attorneys will have a final opportunity

2    to make legal objections before I finally impose sentence.

3              As I have said on the record already, I agree with the

4    parties -- both parties and probation -- that the guidelines

5    range is 33 to 36 months, not 30 to 36, as set forth in the

6    plea agreement.  Neither party objected to that.  I asked

7    repeatedly and Mr. Goldman has said he is not raising an

8    objection.  Nevertheless, he argued to me that I should somehow

9    depart and I will deal with that in a moment.  In terms of my

10   own calculation, though, as I say, I do calculate that the

11   range is 33 to 36 months, as follows:

12             The base offense level is six under the sentencing

13   guidelines Section 2N2.1C1 and 2B1.1A2, and that is because

14   Count One, to which Mr. Zulueta pled guilty, is a violation of

15   the FDCA that involves fraud.  And the statutory maximum is

16   less than 20 years.  The offense level is increased by 14

17   levels according to the loss amount table.  The parties have

18   agreed that the intended loss amount was greater than $550,000

19   but less than $1.5 million.  There is an additional two-level

20   enhancement for Mr. Zulueta's role in the offense because, as a

21   licensed race horse trainer, with custody and charged with the

22   care of other people's animals, he abused that position of

23   trust.

24             I have taken into account the two-level reduction for

25   acceptance of responsibility under Section 3E1.1(a) of the

1    guidelines and if I did not, I hereby grant the government's

2    motion for a further one-level reduction based on Mr. Zulueta's

3    giving timely notice of his intent to plead guilty under

4    Section 3E1.1(b).  That results in a total offense level of 19.

5          As I have previously said, the plea agreement

6    calculation was based, at least in part, on representations

7    that the defense made to the government prior to entry into

8    that plea, that Mr. Zulueta had no prior criminal history and

9    therefore the parties in the plea agreement used no criminal

10   history points putting him in Criminal History Category I.

11         MR. GOLDMAN:  Your Honor, may I interrupt?  I did not

12   make recommendations, just so you know that so that's clear.

13         THE COURT:  I'm sorry?

14         MR. GOLDMAN:  I did not make representations to the

15   government on -- in getting this plea agreement.  I did not

16   make representations to the government about the criminal

17   record of my client.

18         THE COURT:  Let me just find the plea agreement.

19         MR. GOLDMAN:  It was drafted by the government, I made

20   no representation.  I was unaware of what his criminal history

21   was at the time and what is typically done is the government,

22   who has the resources, knows what the criminal history is of a

23   defendant and they drafted that language and it was acceptable

24   to me.  I did not make any false representations or any

25   representations to the government about criminal history.

M2o5zulS

1          THE COURT:  All right.  Your comments are noted.

2          I will note for the record the plea agreement recites,

3     on page 3, under Criminal History Category:  Based upon the

4     information now available to this office, this office having

5     previously been defined as the United States Attorney for the

6     Southern District of New York ("including representations by

7     the defense").  And it goes on to then find the defendant has

8     zero criminal history points.

9          MR. GOLDMAN:  It is form language, your Honor.

10          THE COURT:  Excuse me, Mr. Goldman.  Don't keep

11     interrupting me.  You have already said that.

12          This form language was signed by Mr. Zulueta and

13     approved, expressly by you, and I specifically confirmed that

14     during the plea hearing.  So if it's form language which you

15     disagree with, you shouldn't have signed it and approved it and

16     you should have advised your client contrary.

17          In any event, the parties now agree, so I don't know

18     why we are having a debate about this, the parties now agree

19     that probation correctly assessed three criminal history points

20     which place Mr. Zulueta in Criminal History Category II.

21          Mr. Zulueta was arrested three times in 2018, all in

22     Pennsylvania where he resides.  First he was arrested and

23     convicted of disorderly conduct and fined for getting into a

24     fight but this offense did not warrant any criminal history

25     points in the calculation.  Second, he was arrested and

1    convicted of harassment and fined again for an altercation that

2    involved violence or the threat of violence, but Second Circuit

3    precedent establishes that a harassment conviction does not

4    warrant any criminal history points.  Third, Mr. Zulueta was

5    arrested for DUI.  He was sentenced to probation and the PSR

6    finds, as do I, that that warrants one criminal history point.

7         Moreover, there are an additional two criminal history

8    points because the offense in this case was committed while

9    Mr. Zulueta was under a state probation term.  That results in

10   a total of three criminal history points putting Mr. Zulueta in

11   a Criminal History Category of II.

12        Under the sentencing guidelines a total offense level

13   of 19 and a Criminal History Category of II results in a

14   guideline range of 33 to 41 months.  However, since

15   Mr. Zulueta's statutory maximum for the crime to which he pled

16   guilty is three years, the guidelines range is 33 to 36 months

17   of imprisonment.

18        Now, Mr. Goldman is correct that the PSR takes the

19   position that the defendant's Criminal History Category may

20   substantially overrepresent the seriousness of defendant's

21   criminal history and may warrant a departure, even though the

22   defendant agreed in the plea agreement that he would not

23   request a downward departure and did not object to and in fact

24   concurs in the calculation of the guidelines range.  Counsel

25   has now asked me to depart and adopt the PSR position that a

M2o5zulS

departure is warranted with respect to the Criminal History

Category.

          As I have said previously, I deny that request.  You

have agreed that the criminal history calculation is correct

and I do not believe you are correct that that DUI is not

something I can consider as part of the overall mix of

information relevant to sentencing.  I do not agree, in any

event, that any departure is warranted on the facts before me.

          While Mr. Zulueta, his record for the DUI may have

been expunged, if that's what you are telling me, nevertheless

he was on probation with regard to that offense and probation

required that he stay out of trouble.  He nevertheless

continued the criminal course of conduct which led to his

guilty plea in this case, conduct that he admitted at the time

of his plea he knew was wrong and illegal.  I believe that his

Criminal History Category appropriately reflects the

seriousness of committing a crime while on probation.

          I similarly do not see any reason -- I have given you

my guidelines calculation which, as I say, is in accord with

what's in the PSR.  I have also considered, as I must, the

factors under Section 3553(a).

          Taking all of those factors into account, I do not see

any reason to vary downward from the range of 33 to 36 months.

The reality is that Mr. Zulueta was placed in a position of

trust with respect to the horses under his care.  The offense

M2o5zulS

1    that he has committed is serious and the record reflects a

2    certain callousness, frankly, about the harm to the animals

3    placed under his care, particularly in the intercepted calls

4    back and forth with Mr. Navarro.  There is also obviously

5    complete disregard for the well-being of the other horses

6    competing against Mr. Zulueta's horses and the jockeys who were

7    riding his horses, and other horses, and could have been very,

8    very seriously injured.

9            Clearly, Mr. Zulueta had a difficult upbringing and it

10    is commendable that he came to the United States, he worked

11    hard, he provided for his family.  He does appear to be a

12    loving family man who is admired by a number of people.  I

13    think if I add up the count, there are roughly 16 or 15 letters

14    in support of Mr. Zulueta.  I do believe that he has the

15    ability, still, to contribute to the community and to achieve

16    the American dream but he, himself, said he came here, he was

17    given tremendous opportunities, and instead of maximizing on

18    those opportunities, while he did work hard, as do all people,

19    frankly, in the business of caring for horses, he abused that

20    opportunity, frankly, and he took active steps to hide what he

21    was doing, none of which, frankly, has been acknowledged in

22    anything I have seen in the record.  The plea allocution talks

23    about getting drugs from Mr. Cohen.  There was no mention

24    whatsoever of the interaction with Mr. Navarro which is, quite

25    frankly, shocking and egregious at the level of callousness

M2o5zulS

1    that I see in the dialogue back and forth between the two of

2    them.  At times it appears that Mr. Zulueta was actually

3    educating Mr. Navarro about new and experimental ways to drug

4    horses and telling him -- telling Navarro -- about the need to

5    be careful to hide what they were doing so that they would not

6    be caught by drug enforcement and horse racing authorities.

7              Now, I do recognize clearly, in terms of relative

8    degrees of culpability, which is a factor that I do need to

9    take into account and I am taking into account, that

10   Mr. Zulueta is relatively less culpable than some of the other

11   defendants in this case, and I certainly have and will take

12   that into account in terms of the sentence that I intend to

13   impose.

14             My intent is to, taking all of the 3553 factors into

15   account after doing my own guidelines calculation, I cannot

16   ignore either the need to deter further criminal conduct not

17   necessarily by this defendant but by others who might think

18   about engaging in similar wrongdoing, and to promote respect

19   for the rule of law and provide just punishment.  For all of

20   those reasons it is the intent of the Court to sentence

21   Mr. Zulueta within the guidelines range.  I intend to sentence

22   him to 33 months of imprisonment.

23             I previously signed a forfeiture order.  Pursuant to

24   the plea agreement Mr. Zulueta agreed to forfeit $47,525.  That

25   order will be part of the judgment in this case.  Based on the

M2o5zulS

 1    record presented to probation and counsel's arguments to me

 2    including that Mr. Zulueta has used up his savings and sold his

 3    home and some of his equipment in order to stay afloat, I do

 4    find that he is unable to pay any fine so it would not be my

 5    intent to impose a fine.

 6            There is, as I think you know, a mandatory $100

 7    special assessment for each count to which he is pleading

 8    guilty.

 9            So, in addition, I would impose a one-year term of

10    supervised release.  It would be my intent to impose the

11    special conditions that are set forth on page 39 of the PSR and

12    a couple of additional conditions.

13            I do have one question for counsel.  Did Mr. Zulueta

14    surrender his passport?

15            THE DEFENDANT:  (In English)  Yes.

16            MR. GOLDMAN:  Yes, your Honor.

17            THE DEFENDANT:  (In English)  Yes.

18            THE COURT:  It is in the possession, then of

19    probation?

20            MR. GOLDMAN:  I believe in Philadelphia, your Honor.

21    He appeared in Philadelphia.

22            THE COURT:  Yes, but to the probation people there?

23            MR. GOLDMAN:  Yes; pretrial services.

24            THE COURT:  So I would intend to impose the following

25    special conditions:

1          One, that Mr. Zulueta be supervised when he is

2     released by the district of his residence.

3          Second, if the probation officer determines, based on

4     his criminal record, personal history, or characteristics that

5     he poses a risk to another person including any organization,

6     the probation officer, with the prior approval of the Court,

7     may require him -- Mr. Zulueta -- to notify -- I'm sorry -- I

8     may require the probation officer to notify that Mr. Zulueta

9     notify the other person about the potential risk and that he

10    comply with any instructions from the probation officer, and

11    the probation officer may contact the person and confirm that

12    notice has been provided of any risk.

13         I had previously imposed a condition, it is not

14    contained in the PSR, but I would intend to include this in the

15    final judgment:  That the defendant must comply with the rules

16    and regulations of any licensing regime to which he is subject,

17    including appearance at any disciplinary proceedings, if

18    required, consistent, of course, with his constitutional rights

19    to the extent he has any that are implicated and that he wishes

20    to assert them.

21         I would also add two additional conditions that were

22    not outlined in the PSR.  One is that the defendant must

23    provide Probation with access to any requested financial

24    information and must not incur new credit card charges or open

25    any additional lines of credit without the approval of the

M2o5zulS

probation officer, unless he is in compliance with the payment

schedule for the forfeiture amount to which he agreed and which

I have ordered.

I would also add a search condition; that Mr. Zulueta

must submit his person and any property, residence, vehicles,

papers, computers, or other electronic communication, data

storage devices, cloud storage, or media, and effects, to

search by any United States probation officer and, if needed,

that officer can enlist the assistance of law enforcement.  The

search would be conducted when there is reasonable suspicion

concerning violation of a condition of supervision or unlawful

conduct by Mr. Zulueta.  Failure to submit to a search may be

grounds for risk indication of release.  Mr. Zulueta would be

obligated to warn any other occupants of his premises that the

premises may be subject to search pursuant to this condition.

Any search would need to be conducted at a reasonable time and

in a reasonable manner.

Mr. Chow, I assume there is no restitution in this

case?

MR. CHOW:  That is correct.

THE COURT:  It is the intent of the Court then that I

would not be obviously entering any restitution order.  As I

said, I do not intend to impose a fine.

Does the government know of any legal reason that this

sentence may not be imposed?

1          MR. CHOW:  No, your Honor.

2          THE COURT:  Mr. Goldman?

3          MR. GOLDMAN:  No, your Honor.

4          THE COURT:  Mr. Zulueta, would you please stand?

5          It is the judgment of the Court that you be imprisoned

6     for a term of 33 months.  That term would be followed by one

7     year of supervised release on the special and mandatory

8     conditions set forth in the PSR and on the special conditions

9     that I have just outlined on the record.  The forfeiture order,

10    the preliminary order I previously entered requiring you to

11    forfeit the amount of $47,525, is incorporated into my

12    judgment.  I am not imposing any fine or restitution.  There is

13    a mandatory $100 special assessment, payable immediately.

14         You may be seated, sir.

15         It is Court's view that Mr. Zulueta is a worthy

16    candidate for voluntary surrender.  I assume there is no

17    objection by the government?

18         MR. CHOW:  No, your Honor.

19         THE COURT:  Mr. Goldman, is there any request with

20    regard to facilities that you would like me to include in the

21    judgment?

22         MR. GOLDMAN:  Yes, your Honor.  Yes; there is a

23    federal facility Fairton, New Jersey, and is close proximity to

24    family and loved ones.

25         THE COURT:  I will include that recommendation in my

M2o5zulS

1    judgment.

2            As I think you know, Mr. Goldman, Mr. Zulueta may

3    not -- a designation of a facility is wholly within the

4    authority of the Bureau of Prisons.  I do not have authority to

5    dictate what facility you should be sent to, but I certainly

6    will make that request.

7            MR. GOLDMAN:  Thank you, your Honor.

8            THE DEFENDANT:  (In English)  Thank you.

9            THE COURT:  You're welcome, sir.

10           Does the government move to dismiss my open counts?

11           MR. CHOW:  Yes.  At this time the government would

12   move to dismiss all open counts against Mr. Zulueta.

13           THE COURT:  Then are you able to tell me, for the

14   record, what those are?

15           MR. CHOW:  I believe it is the original and then the

16   S1 indictment.

17           THE COURT:  Mr. Zulueta, I need to advise you at this

18   time that to the extent you haven't waived it in your plea

19   agreement, you do have the right to appeal from conviction and

20   from the sentence that I have just imposed.  If you are unable

21   to pay the costs of an appeal, you may apply for leave to

22   appeal in forma pauperis.  Any notice of appeal must be filed

23   within 14 days of the judgment of conviction.  We try very hard

24   to get the judgments entered the same day as sentencing --

25   although I do have a full calendar today -- but that judgment

M2o5zulS

1    will be entered either later today or tomorrow, so the clock

2    for any appeal will begin to run at that time and you have 14

3    days.

4           So the Bureau of Prisons, I am advised by probation,

5    that the Bureau of Prisons requires roughly 90 days in order to

6    review the record and to designate a facility, so I order that

7    you surrender, as directed, by the Bureau of Prisons, on May

8    24th, in accordance with the instructions that will be

9    provided.

10          Mr. Zulueta, as I said, in reviewing the record I do

11   acknowledge that you are obviously a hard-working person.  You

12   do genuinely seem to appreciate the opportunity that was given

13   to you in coming to this country and in becoming a citizen.

14   This is the greatest country in the world and it affords

15   unbelievable opportunities to people.  I think you know that,

16   sir.  You went a stray over the course of several years but you

17   have your whole life ahead of you, and it is up to you what you

18   are going to make of your life going forward.  So, I wish you

19   well.  I hope that I will not see you back before me in

20   connection with any violations regarding this case or any other

21   case, and that you will find the right path forward and stay

22   out of trouble.

23          Is there anything further for the record, Mr. Chow?

24          MR. CHOW:  No, your Honor.

25          THE COURT:  Mr. Goldman?

M2o5zulS

1              MR. GOLDMAN:  No, your Honor.

2              THE COURT:  I thank our court reporter very much, and

3    we are adjourned.

4              Thank you to the interpreter as well.

5              We are adjourned.

6                              o0o

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25